UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* JODIE MURRILL, Personal Representative of the Estate of GARY MURRILL, | )<br>)<br>) |
| Plaintiffs, | )<br>) Case No: 4:21-CV-00371-DGK |
| vs. | )<br>) *Oral Argument Requested* |
| MIDWEST CES, LLC, | )<br>) |
| Defendant. | |

**DEFENDANT MIDWEST CES' SUGGESTIONS
IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...............................................................................................................1

LEGAL STANDARD..........................................................................................................2

ARGUMENT .......................................................................................................................3

    I.   Relator Failed to Effect Proper Service of Process of the Complaint.................................3

    II.  Relator's FCA Claims Must be Dismissed Under the Public Disclosure Bar. ....................4

        A.  Relator's allegations were publicly disclosed in at least one federal lawsuit
           against the Social Security Administration....................................................................5

        B.  The allegations made in Ryan's federal case disclose "substantially the same"
           allegations as Relator's FCA claims. .............................................................................7

        C.  Relator is not an "original source" of the public disclosure. ........................................10

CONCLUSION..................................................................................................................12

CERTIFICATE OF SERVICE ..........................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States ex rel. Ambrosecchia v. Paddock Lab'ys, LLC*,
 855 F.3d 949 (8th Cir. 2017) ..................................................................................2, 3

*Danik v. Hous. Auth. of Baltimore City*,
 396 F. App'x 15 (4th Cir. 2010) ....................................................................................3

*Doe #1 v. Am. Fed'n of Gov't Emps.*,
 554 F. Supp. 3d 75 (D.D.C. 2021) ............................................................................3, 4

*U.S., ex rel. Hood v. Satory Glob., Inc.*,
 946 F. Supp. 2d 69 (D.D.C. 2013) ..............................................................................11

*King v. Preferred Fam. Healthcare*,
 No. 20-CV-00895-SRB, 2021 WL 2458676 (W.D. Mo. June 16, 2021) ..................4

*U.S. ex rel. Paulos v. Stryker Corp.*,
 762 F.3d 688 (8th Cir. 2014) ........................................................................................4

*Ryan v. Kijakazi*,
 No. 4:19-cv-00772-BP (W.D. Mo. Sept. 23, 2019)..........................................5, 6, 12

*United States v. Allstate Ins. Co.*,
 No. 2:19-CV-11615, 2022 WL 3213529 (E.D. Mich. Aug. 9, 2022)........................8

*United States v. CSL Behring, L.L.C.*,
 855 F.3d 935 (8th Cir. 2017) .................................................................................5, 12

**Statutes**

31 U.S.C. §§ 3729 to 3732.................................................................................................1

31 U.S.C. § 3730...............................................................................................................10

31 U.S.C. § 3730(e)(4)...................................................................................................2, 4

31 U.S.C.§ 3730(e)(4)(A) ..............................................................................................5, 7

31 U.S.C.§ 3730(e)(4)(A)(i) .........................................................................................5, 11

False Claims Act .................................................................................................................1

FCA............................................................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 10(c) ........................................................................................................................3

Fed. R. Civ. P. 12(b)(6).......................................................................................................... *passim*

Federal Rules of Civil Procedure Rule 12(b)(5) ............................................................................3

Federal Rules of Civil Procedure Rules 12(b)(5) and 12(b)(6) .....................................................1

Rule 4(c)(1) ....................................................................................................................................3

Defendant Midwest CES, LLC ("**Midwest**"), through counsel, submits the following Suggestions in Support of its Motion to Dismiss pursuant to Rules 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure for insufficient service of process and for failure to state a claim upon which relief can be granted.

**INTRODUCTION**

Relator Jodie Murrill ("**Relator**"), as the personal representative of the Estate of Gary Murrill, brought this *qui tam* action against Midwest pursuant to the federal civil False Claims Act (the "**FCA**"), *see* 31 U.S.C. §§ 3729 to 3732. Relator is the widow of Gary Murrill, a former Social Security Disability claimant who was referred to Midwest for a consultative examination. (Compl. ¶¶ 38–41.) Relator accompanied Mr. Murrill to his scheduled examination on or about September 14, 2019. (*Id.* ¶ 42.) In the Complaint, Relator alleges that a Midwest provider evaluated Mr. Murrill for less than five minutes and failed to take notes during the examination. (*Id.* ¶ 47.) Additionally, Relator alleges that the report generated by Midwest's provider included false information concerning the types of tests performed and Mr. Murrill's ability to perform those tests. For instance, among other things, the report stated that Mr. Murrill was able to unbutton his shirt, write a sentence with a pen, and handle his personal belongings. (*Id.* ¶ 52.) Relator contends that none of these tests were performed. (*Id.* ¶¶ 53–55.)

Sadly, Mr. Murill died the following year from causes that are not disclosed in the Complaint. After his death, Relator commenced this action, alleging that Midwest has engaged in a pattern and practice of submitting false consultative examination reports and invoices to the Government for reimbursement. (*Id.* ¶¶ 10–11, 36–37, 64–66.) After investigating Relator's claims, the Government declined to intervene and Relator is left to prosecute this case. Relator served Midwest with a copy of the Complaint and Summons but failed to provide copies of Exhibits B and C, which are also inaccessible on the docket as they were sealed upon Relator's

motion. Midwest moves to dismiss this action because it has not been served with the Complaint and all exhibits as required by the Federal Rules of Civil Procedure.

Midwest also moves to dismiss the Complaint under the public disclosure bar outlined in 31 U.S.C. § 3730(e)(4). The information disclosed in Relator's Complaint is "substantially the same" as allegations made in a previously filed lawsuit. In 2019, on behalf of Michael J. Ryan, BennettDriskill sued the Social Security Administration in federal district court. Like Mr. Murrill, Mr. Ryan had been denied Social Security Disability benefits after being examined by a Midwest provider. Significantly, in a publicly available order, it is apparent that Mr. Ryan made similar allegations against Midwest concerning the quality of its consultative examinations and the veracity of the reports submitted to the Government for its benefits determinations. There is no indication in the Complaint the Relator ever disclosed her concerns to the Government before she initiated this case—a prerequisite to this Court applying the "original source" exception to the public disclosure doctrine.

The background of these cases demonstrate that the Government has repeatedly determined not to pursue Midwest under the False Claims Action despite being a party to at least one action informing it of Midwest's alleged misconduct. Although government intervention does not preclude this case from proceeding, the public disclosure bar does.

## LEGAL STANDARD

To survive a motion to dismiss, "[a] complaint must state a claim to relief that is plausible on its face, accepting the factual allegations in the complaint as true and viewing them in the light most favorable to the plaintiff." *United States ex rel. Ambrosecchia v. Paddock Lab'ys, LLC*, 855 F.3d 949, 954 (8th Cir. 2017) (alteration in original) (citation omitted) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 12(b)(6).

After the FCA was amended in 2010 to remove language classifying the public disclosure

bar as jurisdictional, courts have disposed of such cases under Rule 12(b)(6). In doing so, however, the Eighth Circuit has held that courts may consider matters outside of the complaint, including "matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." *Ambrosecchia*, 855 F.3d at 954 (alteration in original) (citing *U.S. ex rel. Paulos v. Stryker Corp.*, 762 F.3d 688, 696 (8th Cir. 2014)).

## ARGUMENT

I. **Relator Failed to Effect Proper Service of Process of the Complaint.**

The Court should dismiss this case pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure due to insufficient service of process. Under Rule 4(c)(1), to effectuate proper service of process, the plaintiff must serve a copy of the summons and complaint on the defendant within the requisite timeframe. The federal rules "require that a defendant be served with the *complete pleading*." *Danik v. Hous. Auth. of Baltimore City*, 396 F. App'x 15, 16 (4th Cir. 2010) (emphasis added) (citing Rule 4(c) of the Federal Rules of Civil Procedure). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Interpreting these rules together, "courts have held that if a plaintiff fails to serve a document attached to his complaint, he fails to serve the complete pleading, and service is improper." *Doe #1 v. Am. Fed'n of Gov't Emps.*, 554 F. Supp. 3d 75, 124 (D.D.C. 2021) (citations omitted) (internal quotation marks omitted).

Relator did not serve a copy of Exhibit B (a list of former or current SSDI claimants) or Exhibit C (the false and fraudulent consultative examination reports and invoices submitted to the Government), which she indicated were attached to the Complaint. (Compl. ¶¶ 65–66.) Furthermore, on September 12, 2022, the Court granted Relator's Motion to Seal Exhibits B and C of the Complaint, which prohibited Midwest's access to documents purporting to demonstrate that "Midwest [had] engaged in a pattern and practice of submitting false claims, in the form of

3

fraudulent CE reports and invoices, to the Government for payment."(*Id.* ¶ 66; *see also* Dkt. Nos. 8–9.) Midwest has suffered unfair prejudice due to the deficient service of process because it cannot review the files associated with the allegedly false examinations and reports to conduct the due diligence necessary to determine whether these other similar claims were already public knowledge—a circumstance that would bar this suit under the FCA.

Based on the foregoing, Relator cannot meet her burden to establish that service of process was valid under governing law. *See King v. Preferred Fam. Healthcare*, No. 20-CV-00895-SRB, 2021 WL 2458676, at *2 (W.D. Mo. June 16, 2021). Without sufficient service of process, this Court lacks personal jurisdiction over Midwest and dismissal is required. *See Am. Fed'n of Gov't Emps.*, 554 F. Supp. 3d at 122.

**II.    Relator's FCA Claims Must be Dismissed Under the Public Disclosure Bar.**

Relator fails to state a claim upon which relief can be granted under Rule 12(b)(6) because the *qui tam* Complaint contains allegations that are substantially the same to those that have been publicly disclosed and Relator is not an original source of the information. *See* 13 U.S.C. § 3730(e)(4). The FCA's *qui tam* provision "is designed to promote private citizen involvement in exposing fraud against the government, while at the same time, the public disclosure bar works to prevent parasitic suits by opportunistic late-comers who add nothing to the exposure of the fraud." *Paulos*, 762 F.3d at 692 (citation omitted) (internal quotation marks omitted). Section 3730(e)(4) provides:

> The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—
>
> (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
>
> (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or

(iii) from the news media[.]

31 U.S.C. § 3730(e)(4)(A). A relator's claim is excepted from the public disclosure bar, however, if the relator is "an original source of the information." In sum, dismissal is required under the public disclosure bar if "(1) the defendant has shown public disclosure under § 3730(e)(4)(A), and (2) the relator does not fit § 3730(e)(4)(B)'s definition of 'original source.'" *United States v. CSL Behring, L.L.C.*, 855 F.3d 935, 941 (8th Cir. 2017) (citation omitted).

### A. Relator's allegations were publicly disclosed in at least one federal lawsuit against the Social Security Administration.

Relator's FCA claims against Midwest were publicly disclosed in 2019 in a federal lawsuit against the Social Security Administration. *See Ryan v. Kijakazi*, No. 4:19-cv-00772-BP (W.D. Mo. Sept. 23, 2019), a true and correct copy of the docket is attached as Exhibit A.[1] Relevant here, there has been a public disclosure if the relator's allegations were previously disclosed in a federal civil or administrative hearing in which the Government is a party. *See* 31 U.S.C. § 3730(e)(4)(A)(i).

On September 23, 2019, Michael J. Ryan sued Andrew M. Saul,[2] Commissioner of the Social Security Administration. *See Ryan*, No. 4:19-cv-00772-BP. The federal lawsuit stemmed from repeated denials of Ryan's application for Social Security Disability benefits for injuries he had sustained in a car accident.[3] After the Social Security Administration originally denied Ryan's

---

[1] Relator's counsel of record, BurnettDriskill, Attorneys, also represented the plaintiff Michael James Ryan in that 2019 action.

[2] Kilolo Kijakazi, the acting Commissioner of the Social Security Administration, was later substituted as the defendant in that action.

[3] *See* Eric Adler, "They were denied disability benefits after medical exams in KC. But was it fraud?" THE KANSAS CITY STAR (Updated Oct. 2, 2022), a true and correct copy of the news article is attached as Exhibit B.

request for disability benefits, he appealed[4] the decision to an administrative law judge who determined that Ryan should be examined by an orthopedic specialist to better assess his claim. Ryan was referred to Midwest for the consultative examination where he was allegedly examined by an ear, nose, and throat specialist rather than an orthopedic specialist. After Midwest's examination, Ryan was denied benefits two more times before he filed suit against the Social Security Administrative in the United States District Court for the Western District of Missouri.

In a publicly accessible Order, the district court reversed the commissioner's denial of benefits and remanded the case, so Ryan could undergo a new consultative examination along with a review of his medical records. In so ruling, the court noted that the administrative law judge's instructions had been disregarded. Specifically, the court explained that Ryan had not been examined by an orthopedist or an orthopedic surgeon, that additional imagining had not been conducted, and that it was unclear whether Ryan's prior medical records had been evaluated. *See* Order and Opinion Reversing Commissioner's Final Decision Denying Benefits and Remanding for Further Proceedings, at 2, a true and correct copy of the Order is attached at Exhibit C. The court recognized that the medical report did not mention the car accident but instead stated that the physical ailments "began in 2015 due to an unknown etiology." *Id.* at 2 n.1.

This is just one case in which allegations of fraud against Midwest have been publicly disclosed, thereby subjecting Relator's FCA claims to dismissal under Rule 12(b)(6) and the public disclosure bar. Significantly, the recent Kansas City Star news article, cited above, explains that "[t]he Kansas City law firm of BurnnettDriskill has filed at least 15 lawsuits on behalf of its clients,

---

[4] According to the Social Security Administration's website, there are four stages to appeal a denial of benefits: (1) reconsideration, (2) hearing by an administrative law judge, (3) review by the Appeals Counsel, and (4) review by the federal district court. Social Security, Disability Benefits / Appeal a Decision, https://www.ssa.gov/benefits/disability/appeal.html?tl=0%2C1%2C3.

including Michael Begnaud of Liberty, against the Social Security Administration or physicians working for Midwest CES." These cases may serve as additional sources of public disclosure precluding this action.

### B. The allegations made in Ryan's federal case disclose "substantially the same" allegations as Relator's FCA claims.

Relator's FCA claims against Midwest are "substantially the same" as allegations lodged in Ryan's case against the Social Security Administration. *See* 31 U.S.C. § 3730(e)(4)(A). In the Complaint, Relator's allegations fall into three primary categories: (1) Midwest's medical providers lack the requisite training, certification, or specialization to conduct consultative examinations; (2) the consultative examinations performed by Midwest do not comply with federal regulations and guidelines; and (3) the reports submitted to the Government include fraudulent, incomplete, inadequate, misleading, or false information. These allegations were already publicly disclosed to the federal government in the Ryan case.

As further explained in Section I.A, Ryan argued that Midwest scheduled him to be examined by an ear, nose, and throat specialist instead of an orthopedic specialist as instructed by the administrative law judge. In essence, Ryan claimed that the medical provider was not qualified to assess his injuries and generate the findings necessary for the Social Security Administration to accurately evaluate his disability claim. Similarly, here, Relator questions the education, training, and board certification of Dr. Amin, alleging,

> 46. At the time of Mr. Murrill's appointment, Dr. Amin had been out of medical school for less than two years. He had not completed his residency requirement. He was not board certified in any field. He had no training in medical evaluations.

(Compl. ¶ 46.) In both instances, the federal government had notice of and an opportunity to

7

evaluate the credentials of Midwest's medical providers to determine whether Midwest was adhering to government regulations.

Addionally, from the public Order, it appears that Ryan and the federal court inquired as to whether the consultative examinations were as comprehensive as the guidelines contemplated. In particular, the court stated that it was unclear from the record whether the medical provider had reviewed Ryan's prior medical records—a necessary element of a consultative examination. *See* Order at 2. In the Complaint, Relator outlined the complete list of elements as follows:

> (c) *Elements of a complete consultative examination.* A complete consultative examination is one which involves all the elements of a standard examination in the applicable medical specialty. When the report of a complete consultative examination is involved, the report should include the following elements:
>
> (1) Your major or chief complaint(s);
>
> (2) A detailed description, within the area of specialty of the examination, of the history of your major complaint(s);
>
> (3) A description, and disposition, of pertinent "positive" and "negative" detailed findings based on the history, examination and laboratory tests related to the major complaint(s), and any other abnormalities or lack thereof reported or found during examination or laboratory testing;
>
> (4) The results of laboratory and other tests (e.g., X-rays) performed according to the requirements stated in the Listing of Impairments (see appendix 1 of this subpart P);
>
> (5) The diagnosis and prognosis for your impairment(s);
>
> (6) *A medical opinion.* Although we will ordinarily request a medical opinion as part of the consultative examination process, the absence of a medical opinion in a consultative examination report will not make the report incomplete. See § 404.1513(a)(3); and
>
> (7) In addition, the medical source will consider, and provide some explanation or comment on, your major complaint(s) and any other abnormalities found during the history and examination or reported from the laboratory tests. The history, examination, evaluation of laboratory test results, and the conclusions will represent the information provided by the medical source who signs the report.

(Compl. ¶ 30.) Although Relator does not specifically question whether Dr. Amin reviewed her husband's prior medical records, that challenge is implicit in her allegation that "Dr. Amin's 'examination' of Mr. Murrill lasted a total of fewer than five minutes." (*Id.* ¶ 47.) In essence, Relator argues that the short duration of the examination also impugned the quality and thoroughness of the examination. Even if this Court determined that information related to the duration of the examinations was somehow new, courts have held that "[m]erely add[ing] some new details to describe essentially the same scheme by the same corporate actor" is not enough to survive the public disclosure bar. *United States v. Allstate Ins. Co.*, No. 2:19-CV-11615, 2022 WL 3213529, at *10 (E.D. Mich. Aug. 9, 2022) (second alteration in original) (quoting *United States ex rel. Holloway v. Heartland Hospice, Inc.*, 960 F.3d 836, 851 (6th Cir. 2020)). In both cases,

8

Ryan and Relator are alleging essentially the same scheme—that is, Midwest is defrauding the Government by providing inadequate consultative examinations that do not comport with federal regulations and then requesting reimbursement for those examinations.

Finally, in both cases, the plaintiffs have alleged that Midwest submitted fraudulent consultative examination reports to the Government. In reporting on Ryan's case, the news article explained that his report included false statements concerning the medical provider's observations during the exam.

> Midwest CES in March 2018 by an ear, nose and throat specialist. In his report, the doctor wrote: "I generally observed the claimant to be able to button and unbutton a shirt, pick up and grasp a pen and write a sentence and lift, carry and handle personal belongings."

Ryan challenged the veracity of this statement, stating that he does not wear button-up shirts, nor did he bring any personal belongings to the examination. Ryan lamented that "[t]he exam [he] received was nothing like the report that was submitted." Ultimately, he concluded that the report included "a whole bunch of fake stuff."

Relator made nearly identical claims regarding the reports, alleging,

> 52. In his report, Dr. Amin stated that:
>
> "I generally observed the claimant to be able to button and unbutton a shirt, pick up and grasp a pen and write a sentence and lift, carry and handle personal belongings."

(Compl. ¶ 52.) Like in Ryan, Relator alleged that "Mr. Murrill arrived at his examination wearing a shirt with no buttons" and "[a]t no time during the examination did Mr. Murrill lift, carry or handle any personal belongings" because he had not brought any with him. (*Id.* ¶¶ 53, 55.) The concern in both cases was that Midwest uses a template report that includes identical language.

9

> Sciolaro, the attorney, said the "shirt" and "belongings" line was fraudulent, canned language found replicated in multiple Midwest CES reports, similar to the "doorknob" language.

Adler, *supra* n.2, at 14.

> 66. Exhibits A, B and C demonstrate that Midwest engaged in a pattern and practice of submitting false claims, in the form of fraudulent CE reports and invoices, to the Government for payment. One such pattern is the utilization of a template or form for every examinee, regardless

(Compl. ¶ 66.) The public disclosure in Ryan's case undoubtedly includes substantially the same allegations as those pled in the Complaint, therefore Relator's claim must be dismissed pursuant to 31 U.S.C. § 3730.

### C. Relator is not an "original source" of the public disclosure.

The Relator is not an original source of the public disclosure in the Ryan case. Under the FCA, "original source" is defined as

> an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

*Id.* § 3730(e)(4)(B).

Relator does not fall within the first definition of "original source" for a simple reason: there is no allegation that she voluntarily disclosed any information related to her FCA claim to the Government before the public disclosure. *See id.* § 3730(e)(4)(B)(i). The Complaint in this case was filed on June 3, 2021—twenty-one months after Ryan's case was filed against the Social Security Administration. Indeed, it would have been nearly impossible for Relator to be the

original source under this definition because Mr. Murrill had visited Midwest for his consultative examination only nine days before Ryan filed his complaint in federal court. At that point, the Government had already participated in the administrative appeals process and was aware of Ryan's allegations against Midwest. *See id.* § 3730(e)(4)(A)(i) (including "administrative hearing[s]" as a source for public disclosure).

Relator also does not fall within the second definition of an "original source." As a threshold matter, upon information and belief, Relator did not "voluntarily provide[] the information to the Government before filing an action under this section." *See id.* § 3730(e)(4)(B)(ii). This fact alone discloses a finding that she is an "original source" under this definition. But even if Relator can prove that she notified the Government of the FCA allegations before filing this case, she cannot demonstrate that she "has knowledge that is independent of and materially adds to the publicly disclosed allegations." *See id.* § 3730(e)(4)(B)(ii).

To begin, there is a question as to whether a plaintiff who initiates a lawsuit as a personal representative of an estate can "have knowledge" as contemplated by the FCA. In other published cases, courts have sometimes allowed a personal representative to be substituted as a party if a relator dies during the litigation. *See*, *e.g.*, *U.S., ex rel. Hood v. Satory Glob., Inc.*, 946 F. Supp. 2d 69, 81 (D.D.C. 2013). That is not the procedural posture of this case. The decedent, Mr. Murrill, was never the relator in this *qui tam* action, which is based on his consultative examination and report. Upon information and belief, Mr. Murrill died in June 2020. This case was not filed until one year later in June 2021. There is no indication that he consulted with lawyers or otherwise corroborated Relator's version of events concerning the consultative examination.

Nevertheless, Relator is not an "original source" because she does not possess knowledge that is "*independent* of and *materially adds* to the publicly disclosed allegations." Relator retained

the same lawyers as Ryan. Although the cases assert different causes of actions and include different defendants, they both include analogous allegations against Midwest and its medical providers to support their claims for relief. It is reasonable to assume that Relator's knowledge of Midwest's practices and procedures was derived from knowledge that the law firm gained from its prior litigation on behalf of Social Security claimants. Relator's knowledge is therefore not "independent of" the public disclosure.

Finally, Relator has not "materially add[ed]" to the information already available to the Government. Information does not materially add to the publicly disclosed allegations unless "it is 'qualitatively different' from information already discovered." *CSL Behring*, 158 F. Supp. 3d at 792–93. There is nothing qualitatively different about the allegations in *Ryan* and the present action. In both instances, the plaintiffs complained that the consultative examinations they received were inadequate and that the reports included false statements. Even if Ryan did not complain that Midwest was fraudulently reimbursed for his exam and report, the Government knows that it pays for consultative examinations for individuals applying for Social Security Disability benefits. (*See* Compl. ¶ 25.) Relator does not qualify as an original source under the statutory exemption to the public disclosure bar. Accordingly, her Complaint must be dismissed for failure to state a claim under Rule 12(b)(6).

## CONCLUSION

Based on the foregoing, Midwest respectfully requests that the Court dismiss the Complaint

in its entirety with prejudice.

> ARMSTRONG TEASDALE LLP
>
> By: */s/ David A. Jermann*
> David A. Jermann (#51389)
> 2345 Grand Boulevard, Suite 1500
> Kansas City, Missouri 64108-2617
> 816.221.3420
> 816.221.0786 (Facsimile)
> djermann@atllp.com
>
> ATTORNEY FOR DEFENDANT
> MIDWEST CES, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 7th day of November, 2022, a copy of the above and foregoing was filed via the Court's electronic filing system which sent notification of such filing to all counsel of record.

*/s/ David A. Jermann*
Attorney for Midwest CES, LLC
