# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* JODIE MURRILL, Personal Representative of the Estate of GARY MURRILL, <br><br> Plaintiffs, <br><br> vs. <br><br> MIDWEST CES, LLC, <br><br> Defendant. | Case No: 4:21-CV-00371-DGK <br><br> *Oral Argument Requested* |

## DEFENDANT MIDWEST CES' REPLY SUGGESTIONS IN SUPPORT OF MOTION TO DISMISS

ARMSTRONG TEASDALE LLP

By: */s/ David A. Jermann*
David A. Jermann (#51389)
2345 Grand Boulevard, Suite 1500
Kansas City, Missouri 64108-2617
816.221.3420
816.221.0786 (Facsimile)
djermann@atllp.com

ATTORNEY FOR DEFENDANT
MIDWEST CES, LLC

Midwest CES, LLC, through counsel, hereby submits these Reply Suggestions in Support of the Motion to Dismiss.

## ARGUMENT

### I. This Court Lacks Jurisdiction Over Midwest Because Relator did not Serve Midwest in Substantial Compliance with Rule 4.

Relator first argues that dismissal is not warranted under Rule 12(b)(5), because she has cured any defect in service of process by recently providing copies of the sealed exhibits to Midwest. In so arguing, however, Relator implicitly concedes that service was improper because Midwest was not served with the "complete pleading" as required by the Federal Rules of Civil Procedure. *Doe #1 v. Am. Fed'n of Gov't Emps.*, 554 Supp. 3d 75, 124 (D.D.C. 2021) (citation omitted). The fact that Midwest knew the Government was investigating it for possible violations of the False Claims Act does not mean that Midwest knew the contents of the sealed exhibits. For instance, the Complaint states that Exhibit C includes the false and fraudulent consultative examination reports and invoices submitted to the Government seeking payment with respect to those claimants. (Compl. ¶ 65.) The Civil Investigative Demand (the "**CID**") did not disclose that information to Midwest. Rather, the CID requested documents and information from Midwest to aid the Government's investigation and decision to intervene in this *qui tam* action.

Relator next cites *Armed Forces Bank, N.A. v. Gianulias* to support her contention that she substantially complied with Rule 4. *See* No. 11-00974-CV-W-DGK, 2012 WL 1077894, at *5 (W.D. Mo. Mar. 30, 2012). But *Gianulias* is distinguishable from the facts presented here. In that case, a process server visited the defendant's residence and rang the doorbell several times before deciding to leave. *Id.* As the process server was walking to his vehicle, he heard the garage begin to open and observed a driver hurriedly pulling out and ultimately striking the garage door with his car. *Id.* The driver stared at the process server but refused to stop even after being advised as

1

to the reason the process server was there. *Id.* The process server dropped the documents in the driveway as he left the residence to evade personal service. *Id.* The federal district court concluded that there had been substantial compliance with Rule 4 because the documents were left close to the house and the driver would have seen where they were located. *Id.* In support, the court noted that there was no allegation that the defendant had not received actual notice of the claim. *Id.*

Midwest is not contesting how the papers were served; rather, Midwest is arguing that it did not receive a complete copy of the Complaint because the exhibits were not attached. It is unreasonable to assume Midwest monitored the docket close enough to access the exhibits during the few days they were unsealed after the Government declined to intervene. It did not. Midwest has been prejudiced through their inability to investigate other actions that Burnett Driskill has admittedly filed on behalf of other Social Security claimants. Such investigation is necessary for Midwest to understand the extent that similar allegations have been publicly disclosed and therefore to avoid unnecessary litigation costs and expenses in this matter. Finally, even if Relator desired to keep those documents sealed from the public, it was her burden to serve the exhibits along with the Complaint on Midwest to give this Court jurisdiction over the parties. Without personal jurisdiction, this case must be dismissed under Rule 12(b)(5).

## II. The Public Disclosure Doctrine Bars this FCA Action.

### a. Mr. Ryan publicly impugned the accuracy of Midwest reports.

Relator contends that there has not been a public disclosure, because Judge Phillip's Order did not identify Midwest and because Mr. Ryan had not known that his report was part of pattern of allegedly falsified reports. First, even though Judge Phillip's Order does not explicitly mention Midwest, the medical provider was necessarily identified in the *Ryan* case. *See Ryan v. Kijakazi*, No. 4:19-cv-00772-BP (W.D. Mo. Sept. 23, 2019). In that case, Mr. Ryan alleged that the denial of his application for Social Security benefits was based on an inadequate consultative examination

2

and report. It is apparent from Judge Phillip's Order reversing the denial of benefits that the district court reviewed the report before determining that it was prudent for Mr. Ryan to undergo a new consultative examination. That report—which is attached as Exhibit 2 to Relator's Opposition— clearly identifies "Midwest CES, LLC" at the top of the page. As a party to the *Ryan* case, the Government would have known that Midwest was the provider allegedly involved in submitting false reports and invoices for payment. *United States v. CSL Behring, L.L.C.*, 855 F.3d 935, 944 (8th Cir. 2017) ("[T]he public disclosures must 'set the government squarely on the trail' of a specific and identifiable defendant's participation in the fraud." (citation omitted)).

Second, notwithstanding Mr. Ryan's knowledge of the alleged scheme, Judge Phillip's Order notified the Government that Midwest's report contained at least one possibly false statement. Specifically, Mr. Ryan applied for benefits after being severely injured in a car accident. But, according to the Order, the report stated that Mr. Ryan's physical impairments "began in 2015 due to an unknown etiology." *See* Order and Opinion Reversing Commissioner's Final Decision Denying Benefits and Remanding for Further Proceedings, at 2 n.1. This statement paired with the court's other observations that the medical provider who conducted the consultative examination did not order additional imaging or review Mr. Ryan's prior medical records should have put the Government on notice of the possibility of fraud such that the public disclosure bar applies in this case. *See CSL Behring, L.L.C.*, 855 F.3d at 944.

### b. Substantially the same allegations were made in Ryan.

Relator argues that Judge Phillip's Order did not disclose substantially the same allegations as those alleged in the Complaint. Specifically, Relator asserts that Mr. Ryan did not advise the Government that Midwest's reports contained boilerplate language. In support, she asserts, among other things, that Burnett Driskill "had not yet acquired and reviewed the volume of reports

3

necessary to detect the boilerplate language and scheme in those reports." Opposition at 10. Relator concedes, however, that Mr. Ryan had challenged the ALJ's decision to give great weight to the report. Although Mr. Ryan may have been unaware of any alleged pattern with Midwest's reports, his federal lawsuit against the Social Security Administration challenged the adequacy of his report in substantially the same way that Relator challenged her husband's report. In both cases, the plaintiffs allege that the reports contain false or inaccurate statements. The only difference with this case is that Relator now alleges that dozens of reports contain inaccuracies that rise to the level of false claims in violation of the FCA. This is insufficient for the Court to conclude that the allegations are different enough to evade the public disclosure bar.

### c. Relator does not qualify for the original source exception to the public disclosure bar.

Relator argues that she is an "original source" of the public disclosure because, through counsel, she identified boilerplate language in Midwest's reports and advised the Government of alleged pattern of intentional misrepresentations. *See* Opposition at 12–13. As further explained in the opening brief, there are two definitions of "original source" under 31 U.S.C. § 3730(e)(4)(B). Under the first definition, prior to the public disclosure, an individual must have "voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based." *Id.* § 3730(e)(4)(B)(i). Relator never alleges or argues that she voluntarily disclosed the requisite information to the Government "prior to the public disclosure." *See id.* Instead, she reiterates the same arguments she raised to contend that there was no public disclosure in *Ryan*. Specifically, Relator argues that (1) Judge Phillip's did not identify Midwest in the Order and (2) Mr. Ryan had not challenged the validity of his report. These arguments were addressed in Section I above. Based on the foregoing, if the Court concludes that there has been a public disclosure, it is undisputed that Relator did not disclose the alleged fraud before Ryan and thus

4

Case 4:21-cv-00371-DGK   Document 19   Filed 12/15/22   Page 5 of 8

cannot be an "original source" under the first definition.

To be an "original source" under the second definition, an individual must have "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions." *Id.* § 3730(e)(4)(B)(ii). Furthermore, the individual must voluntarily provide that information to the Government *before* filing a *qui tam* action. *See id.* As a threshold matter, Relator's allegation that she provided the information to the Social Security Administration before filing this case is conclusory. It is unclear from the Complaint and the Opposition when Relator disclosed "the Midwest scheme" and with whom counsel corresponded to provide examples of other allegedly false reports. The chronology is relevant. If the proper process was not followed, Relator cannot be exempt from the public disclosure bar. In other words, if the Court concludes that Relator did not first notify the Government of alleged scheme before filing this case, it need not analyze whether Relator has knowledge that is "independent of" and "materially adds" to the public disclosure. The Court should instead determine that Relator is not an "original source" under the second definition.

Nevertheless, if so inclined, the Court may conclude that Relator's knowledge is not "independent of" the publicly disclosed allegations, nor does her knowledge "materially add[]" to them. It is apparent from the record that Relator derived her knowledge of the alleged scheme through counsel who have also represented Mr. Ryan. Relator attended the consultative examination of her late husband and reviewed a single report. There is no allegation that she personally submitted document requests or otherwise obtained private medical records of other Midwest patients so she could determine whether other reports contained "boilerplate language." She simply lacks the personal knowledge of a pattern that the law firm is alleging.

Burnett Driskill has apparently filed more than a dozen law suits on behalf of Midwest

5

Case 4:21-cv-00371-DGK   Document 19   Filed 12/15/22   Page 6 of 8

patients and, in doing so, has gained this knowledge that forms the basis of this FCA claim. Even if the Court were to conclude that there was not a qualifying public disclosure in *Ryan*, it seems likely that Burnett Driskill has publicly disclosed the same or similar allegations in at least one other case that was filed before this action. If the Court is not inclined the dismiss the case outright, Midwest requests the opportunity to conduct limited discovery to reveal the allegations that Burnett Driskill has made on behalf of Midwest patients in any federal cases or the news media.

## CONCLUSION

Midwest requests that the Court dismiss this action with prejudice. Alternatively, the Court should order the parties to engage in discovery for the limited purpose of determining whether there has been a public disclosure by Burnett Driskill that would bar this case.

ARMSTRONG TEASDALE LLP

By: */s/ David A. Jermann*
David A. Jermann (#51389)
2345 Grand Boulevard, Suite 1500
Kansas City, Missouri 64108-2617
816.221.3420
816.221.0786 (Facsimile)
djermann@atllp.com

ATTORNEY FOR DEFENDANT
MIDWEST CES, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 15th day of December, 2022, a copy of the above and foregoing was filed via the Court's electronic filing system which sent notification of such filing to all counsel of record.

*/s/ David A. Jermann*
Attorney for Midwest CES, LLC