IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* JODIE MURRILL, Personal Representative of the Estate of Gary Murrill, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 4:21-CV-00371-DGK ) |
| MIDWEST CES, LLC | ) ) |
| Defendant. | ) ) |

**ORDER**

Now before the Court is Defendant Midwest CES, LLC's ("Midwest") Motion to Dismiss. ECF No. 12. Relator Jodie Murrill brought this *qui tam* action pursuant to the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 et seq., alleging that Midwest knowingly submitted false or fraudulent Consultative Examination ("CE") reports to the United States Social Security Administration ("SSA") to obtain payment and approval. The Government declined to intervene. Midwest seeks to dismiss Plaintiff's complaint based on Federal Rules of Civil Procedure 12(b)(5) (insufficient service of process) and 12(b)(6) (failure to state a claim). For the reasons stated below, Midwest's motion to dismiss is DENIED WITHOUT PREJUDICE, and the parties are ORDERED to conduct limited discovery to determine whether a public disclosure exists.

**Standard of Review**

In ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[]." *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008). To avoid dismissal, a complaint must

include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Plaintiff need not demonstrate the claim is probable, only that it is more than just possible. *Id.*

In reviewing the complaint, the Court construes it liberally and draws all reasonable inferences from the facts in the plaintiff's favor. *Monson v. Drug Enforcement Admin.*, 589 F.3d 952, 961 (8th Cir. 2009). The Court generally ignores materials outside the pleadings but may consider materials that are part of the public record or materials that are necessarily embraced by the pleadings. *Miller v. Toxicology Lab. Inc.*, 688 F.3d 928, 931 (8th Cir. 2012).

**Background**

In 2019, Gary Murrill filed for disability benefits under the Social Security Act. The Disability Determination Services ("DDS") office handles the medical component of disability claims. As part of the process, DDS orders a CE to obtain more information when the medical evidence in a claimant's file is insufficient or inconsistent. Midwest, a limited liability company, contracts with DDS to provide CEs and reports. The SSA pays Midwest for each CE it performs and submits.

After reviewing Gary Murrill's file, DDS ordered him to undergo a CE with Midwest, which he attended on September 14, 2019, with his wife, Jodie Murrill ("Relator"). Jesal S. Amin, MD performed his CE and submitted a report. After reviewing the CE report, DDS denied Mr. Murrill's disability claim. Mr. Murrill sought review before an administrative law judge ("ALJ") but died before his hearing. Relator was substituted as a party in that matter. Through counsel, Relator informed the ALJ that Mr. Murrill's CE report was inaccurate and that

Midwest used boilerplate language in virtually every CE report. In her pre-hearing brief to the ALJ on December 12, 2020, Realtor alleged a pattern of misconduct by Midwest and shared a list with information about 42 other Midwest reports. *See* Murrill ALJ Corresp., Pl.'s Suggestions in Opp., ECF No. 15-4.

On June 3, 2021, Relator filed this suit under the FCA. As required by the FCA, the complaint and attached exhibits were filed under seal. In the complaint, Relator alleges Dr. Amin evaluated Mr. Murrill for less than five minutes, failed to take notes, and falsely stated that certain tests were performed. For instance, the report claimed Mr. Murrill was able to unbutton his shirt, write a sentence with a pen, and handle his personal belongings, although he was never asked to perform these tests. Relator also alleged that Midwest has generated thousands of these boilerplate reports, which has resulted in submission and payment by the SSA for false reports.

While the Government was deciding whether to intervene, it served civil demands on Midwest on at least two occasions. Ultimately, on August 9, 2022, the Government declined to intervene and requested that the complaint be unsealed. ECF No. 6. Later that day, the Court ordered the complaint be unsealed and served upon Midwest. ECF No. 7. On September 10, 2022, Relator filed a motion to re-seal Exhibits B and C, which the Court granted on September 12, 2022. ECF Nos. 8, 9. On September 15, 2022, Relator served the complaint on Midwest *without* the attached exhibits, namely Exhibit B (a list of other social security disability claimants for which Midwest submitted false claims to the government) and Exhibit C (multiple CE reports prepared by Midwest for claimants who are not parties to this action). On November 7, 2022, Midwest moved to dismiss this case.

Relevant to this case is a 2019 federal lawsuit against the SSA in the Western District of Missouri, *Ryan v. Kijakazi*, No. 4:19-cv-00772-BP (W.D. Mo. Sept. 23. 2019), explained in

more detail below. Midwest believes *Ryan* and potentially other lawsuits filed by BurnettDriskill—the law firm representing Relator—are "public disclosures" that bar Relator's claim.

The background of *Ryan v. Kijakazi* is a follows: Claimant Michael Ryan filed for social security disability benefits after a serious car accident in 2015. He was denied disability benefits at the initial level and subsequently appealed to an ALJ. The ALJ determined Ryan should be examined by an orthopedist or an orthopedic surgeon and that additional imaging be conducted. Ryan was referred to Midwest for a CE, where he was examined by an ear, nose, and throat specialist rather than an orthopedic specialist. No evidence in the record indicated the specialist administered additional imaging or evaluated Ryan's prior records. Instead, the specialist indicated Ryan's physical ailments "began in 2015 due to an unknown etiology." Regardless of these deficiencies, the ALJ concluded Ryan retained the Residual Functional Capacity ("RFC") to perform sedentary work. Ryan then appealed this determination in federal court arguing, in part, that the RFC was not supported by substantial evidence. Chief Judge Beth Phillips presided over the case.

On June 23, 2020, Judge Phillips reversed the commissioner's denial of benefits and remanded the case after concluding the RFC was not supported by substantial evidence, in part, because of the CE deficiencies identified above—that the CE was not performed by an orthopedic specialist as the ALJ requested, no additional imaging occurred, and nothing indicated the specialist evaluated Ryan's prior records. *See* Judge Phillips's Order at 2–3, Df.'s Suggestions in Supp., ECF No. 13-3.

On October 2, 2022, the Kansas City Star published an article titled, *They were denied disability benefits after medical exams in KC. But was it fraud?* (the "Article"), that discusses

Midwest's fraudulent scheme. The article interviews various claimants, including Ryan, who were sent to Midwest for CEs and who now claim those exams were "fraudulent, incomplete, inadequate, misleading and contained false information." Article at 4, Df.'s Suggestions in Supp., ECF No. 13-2. Importantly, the Article states, "[t]he Kansas City law firm of BurnettDriskill has filed at least 15 lawsuits on behalf of its clients . . . against the Social Security Administration or physicians working for Midwest CES." *Id.*

## Discussion

### I. Midwest's motion to dismiss under Rule 12(b)(5) is denied.

Midwest requests the Court dismiss this case pursuant to Fed. R. Civ. P. 12(b)(5) due to insufficient service of process since Relator did not serve a copy of Exhibits B and C—which were attached to the complaint—on Midwest. Relator claims it substantially complied with Rule 4 because the Government's civil demands put Midwest on notice (specifically on notice of the case number and information contained in the exhibits), and therefore, Midwest could have viewed the exhibits on CM/ECF during the short period of time they were unsealed. Regardless, Relator claims she cured any potential deficiency in service by serving Midwest with the exhibits just one week after Midwest filed its motion to dismiss.

Under Rule 10(c) "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." And Rule 4(c)(1) requires service of "a copy of the complaint." Interpreted together, "some courts have held that 'if a plaintiff fails to serve a document attached to his complaint, he fails to serve the complete pleading, and service is improper.'" *See, e.g., Doe #1 v. Am. Fed'n of Gov't Emps.*, 554 F. Supp. 3d 75, 124 (D.D.C. Aug. 11, 2021) (quotation omitted) (citing cases). Midwest cites this non-binding case in claiming that dismissal is *required* here. According to the Eighth Circuit, however, when service

is improper, it is within the district court's discretion to either (1) dismiss the suit, or (2) retain the suit, quash service, and allow the plaintiff to re-serve the defendant. *See Adams v. AlliedSignal Gen. Aviation Avionics*, 74 F.3d 882, 886 (8th Cir. 1996). The Court is inclined to retain the suit. And since Relator served the exhibits on Midwest only one week after receiving notice that the exhibits were not attached to the complaint (thus, curing any potential defect), it would be futile to make Relator re-serve Midwest now. As such, Midwest's motion to dismiss pursuant to Rule 12(b)(5) is DENIED.

## II. Midwest's motion to dismiss under Rule 12(b)(6) is denied without prejudice.

Midwest also moves to dismiss Relator's complaint under Rule 12(b)(6) arguing (1) Relator's allegations were publicly disclosed in Judge Phillips's Order in *Ryan*; and (2) Relator is not an "original source" of the information.[1] Relator argues *Ryan* does not serve as a public disclosure, and regardless, she is an "original source" of the information.

The FCA imposes civil liability on one who "knowingly presents . . . a false or fraudulent claim [to the Government] for payment or approval." 31 U.S.C. § 3729(a)(1)(A). The FCA has "*qui tam* enforcement provisions, which allow a private party known as a 'relator' to bring an FCA action on behalf of the Government." *State Farm Fire & Cas. Co. v. United States ex rel. Rigsby*, 580 U.S. 26, 29 (2016). "A relator who initiates a meritorious *qui tam* suit receives a percentage of the ultimate damages award, plus attorney's fees and costs." *Id.* So, in order to strike a balance "between adequate incentives for whistle-blowing insiders with genuinely valuable information and discouragement of opportunistic plaintiffs who have no significant information to contribute of their own," Congress adopted the public disclosure bar. *Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 294–95 (2010). The

---

[1] Given the Court's Order directing the parties to conduct limited discovery into the other lawsuits BurnettDriskill has filed, the Court declines to address the latter argument.

public disclosure bar essentially prevents relators from bringing "*qui tam* complaints based upon information already in the public domain." *United States v. CSL Behring*, L.L.C., 855 F.3d 935, 941 (8th Cir. 2017) (citation omitted); *see* 31 U.S.C. § 3730(e)(4)(A) (public disclosure bar). Section 3730(e)(4)(A) states:

> The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; . . . unless . . . the person bringing the action is an original source of the information.

Under the statute, an "original source" is

> an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

*Id.* § 3730 (e)(4)(B).

In sum, dismissal is required under the public disclosure bar if: "(1) the defendant has shown public disclosure under § 3730(e)(4)(A), and (2) the relator does not fit § 3730(e)(4)(B)'s definition of 'original source.'" *CSL Behring, L.L.C.*, 855 F.3d at 941 (quotation omitted).

According to the Eighth Circuit, "[i]n order to bar claims against a particular defendant, the public disclosures relating to the fraud must either explicitly identify that defendant as a participant in the alleged scheme, *or provide enough information about the participants in the scheme such that the defendant is identifiable*." *Id.* at 944 (quotation omitted). "This means that the public disclosures must set the government squarely on the trail of a specific and identifiable defendant's participation in the fraud." *Id.* (internal quotation marks omitted). Further, "[m]ere

disclosure of the subject matter transaction [is] . . . insufficient to prevent a *qui tam* suit." *Id.* at 947. "Instead, 'the essential elements exposing the transaction as fraudulent must be publicly disclosed as well.'" *Id.* (quotation omitted).

### A. Ryan does not serve as a public disclosure.

According to Midwest, Relator and *Ryan* both allege "essentially the same scheme—that is, Midwest is defrauding the Government by providing inadequate consultative examinations that do not comport with federal regulations and then requesting reimbursement for those examinations." Df.'s Suggestions in Supp. at 9, ECF No. 13. Relator argues *Ryan* did not publicly disclose Relator's allegations about Midwest's pattern of falsifying reports, and the Court agrees.

Judge Phillips's Order focused exclusively on whether there was substantial evidence in the record as a whole to support the ALJ's RFC finding. Nothing in the Order "set the government squarely on the trail" of Midwest's participation in fraud—the Order does not name or implicate Midwest or its physicians; it does not allege Midwest or its physicians were unqualified to perform CEs[2]; and it does not discuss Midwest's use of boilerplate language or even its examination practices generally. *See CSL Behring, L.L.C.*, 855 F.3d at 944. Further, nothing in the parties' briefs in *Ryan* mention Midwest or its participation in fraud. And any argument that the Article demonstrates a public disclosure fails because the Article was published after the filing of this lawsuit. Thus, *Ryan* does not constitute a public disclosure.

---

[2] To the contrary, Judge Phillips clarified that "[t]he Court does not intend to parse when a doctor is or is not qualified to render a medical opinion outside of his or her specialty. However, given the nature and history of Plaintiff's injuries, the ALJ saw a need for not just a consultation, but a consultation conducted by a doctor within that specialty. In light of the ALJ's determination of the needs of the case, the Court cannot conclude that those needs were satisfied." Judge Phillips's Order at 2–3, Df.'s Suggestions in Supp., ECF No. 13-3.

### B. Limited discovery is necessary to determine whether other public disclosures exist.

Based on the Article's statement that BurnettDriskill has filed 15 lawsuits on behalf of its clients against the SSA or physicians working for Midwest, Midwest believes there may be other cases that serve as public disclosures. Midwest requests the Court order limited discovery into these cases in the event the Court denies the motion to dismiss. *See* Df.'s Reply at 6, ECF No. 19; Df.'s Suggestions in Supp. at 7, ECF No. 13. Relator's response does not specifically address the existence of these lawsuits, including the named parties or filing dates, but alludes to their existence and requests leave to amend her pleading to substitute a different Relator in the event the Court determines she is not an appropriate party.[3] In essence, both parties seem to agree that discovery is necessary.[4] Given the record and briefs in these other social security cases are filed under seal and currently unavailable to Midwest, good cause exists to grant limited discovery.

As such, the Court ORDERS the parties to conduct limited discovery to determine whether there has been a public disclosure by BurnettDriskill that would bar this case. The following limitations apply: Each party may serve up to ten (10) requests for production; ten (10) requests for admissions; and ten (10) interrogatories. If the parties believe depositions are necessary, they must file a motion for leave with the Court. Requests for production, requests

---

[3] Specifically, Relator states "[s]hould there remain unresolved issues of fact, Relator and the undersigned request an opportunity to present testimony and to supplement the record with evidence of when and how claimants disclosed information that could constitute substantially the same allegations, as well as who claimants and members of BurnettDriskill may be original sources." Pl.'s Suggestions in Opp. at 14, ECF No. 15. Additionally, "Michael Ryan, other claimants, and/or members of BurnettDriskill may be appropriate substitutes for Relator in the event the Court doubts Murrill is the appropriate party." *Id.*

[4] The Court agrees discovery is necessary, as the Court conducted its own research and found cases filed by BurnettDriskill where "courts have [] taken issue with the consultative examinations performed by Midwest CES [after] allegations of fraud [] surfaced." *Rennie v. Kijakazi*, No. 4:22-CV-00314-WJE, 2023 WL 34609, at *3 (W.D. Mo. Jan. 4, 2023) (citing cases). At least one of those cases may serve as a public disclosure. *See, e.g.*, *Norah v. Kijakazi*, 4:20-CV-00963-BP (W.D. Mo. Apr. 15, 2022).

for admissions, and interrogatories shall be served on the opposing party within fourteen (14) days of this Order. The opposing party must serve its answers and any objections within fourteen (14) days after being served. Any renewed motion to dismiss must be filed on or before June 1, 2023.

If, during discovery, Relator determines she is not the appropriate party and wants to amend her complaint, she must file a motion and accompanying brief—not to exceed ten (10) double-spaced pages in length—with pinpoint citations to relevant Eighth Circuit authority explaining why the Court should allow her leave to do so. The brief should explicitly address this question in light of *qui tam* actions and shall be filed on or before May 11, 2023.

Finally, the Court strongly recommends the parties enter into a protective order at the outset of this limited discovery period given the confidential nature of these social security cases and their filing under seal.

**IT IS SO ORDERED.**

Date:  April 6, 2023                              /s/ Greg Kays
                                                  GREG KAYS, JUDGE
                                                  UNITED STATES DISTRICT COURT